IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

INTERSTATE 10 PARTNERS, LLC, )
 )
  Plaintiff, )
 )  NO. 3:23-cv-01233
v. )
 )  JUDGE RICHARDSON
BERKLEY NATIONAL INSURANCE )
COMPANY, )
 )
  Defendant. )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a "Motion For Leave To File Motion For Partial Summary Judgment And Request For Certification Of Questions To Tennessee Supreme Court" (Doc. No. 42, "Motion") filed by Defendant, Berkley National Insurance Company. Via the Motion, Defendant seeks leave to file a motion for partial summary judgment concerning the damages that Plaintiff would be able to collect from Defendant. Specifically, via its motion for partial summary judgment, Defendant intends to request that the "Court grant partial summary judgment for [Defendant], holding that Tennessee's bad-faith statute, T.C.A. § 56-7-105[(a)], prov[id]es the exclusive extra-contractual remedy in insurance-coverage cases against insurers for refusal to pay,"[1] and that the Court "grant partial summary judgment for [Defendant], holding that

---

[1] Defendant's Motion, in seeking leave to file a motion for partial summary judgment on the damages that Plaintiff may be able to collect, is framed in terms of whether T.C.A. § 56-7-105 generally (rather than a specific subsection of that T.C.A. section) provides the exclusive extra-contractual remedy in insurance-coverage cases against insurers for refusal to pay. However, in Defendant's opening brief (Doc. No. 43 at 3) and reply (Doc. No. 49 at 4) in support of the Motion, as well as in Defendant's proposed memorandum (Doc. No. 42-4 at 11) in support of its proposed motion for summary judgment (Doc. No. 42-1), Defendant refers specifically to whether T.C.A. *§ 56-7-105(a)* provides the exclusive extra-contractual remedy in insurance-coverage cases. Thus, the Court discerns that, in the Motion, Defendant intended to refer to whether T.C.A. *§ 56-7-105(a)* specifically (rather than T.C.A. *§ 56-7-105* generally) provides the exclusive

Tennessee's statutory cap on punitive damages, T.C.A. § 29-39-104, does not violate the Tennessee Constitution's right to a trial by jury." (Doc. No. 42 at 1-2). In connection with this request, Defendant has filed a proposed motion for partial summary judgment (Doc. No. 42-1, "Proposed Motion for Partial Summary Judgment"), a proposed memorandum of law (Doc. No. 42-4) in support of the Proposed Motion for Partial Summary Judgment, and a proposed statement of facts (Doc. No. 42-2) along with an exhibit thereto. (Doc. No. 42-3).

Alternatively to requesting leave to seek partial summary judgment, Defendant requests that the Court certify two questions to the Tennessee Supreme Court, namely: (1) "Does Tennessee's bad-faith statute, T.C.A. § 56-7-105(a), provide the exclusive extra-contractual remedy against an insurer for breach of an insurance policy?"; and (2) "If Tennessee's bad-faith statute does not provide the exclusive extra-contractual remedy against an insurer for breach of an insurance policy, does Tennessee's statutory cap on punitive damages, T.C.A. § 29-39-104, violate the right to a jury trial under the Tennessee Constitution?" (Doc. No. 42 at 2).

Defendant has filed an opening brief (Doc. No. 43) in support of the Motion, Plaintiff, Interstate 10 Partners, LLC, has filed a response (Doc. No. 48) in opposition to the Motion, and Defendant has filed a further reply (Doc. No. 49) in support of the Motion.

For the reasons discussed herein, Defendant's Motion is **DENIED** in its entirety.

BACKGROUND

The instant action arises out of an insurance coverage dispute. Plaintiff "is a Tennessee limited liability company with its principal office located in Nashville, Tennessee." (Doc. No. 17

---

extra-contractual remedy in insurance-coverage cases against insurers for refusal to pay and will analyze the Motion accordingly.

at ¶ 1).[2] Defendant "is an insurance company organized under the laws of the state of Iowa, with its principal office located in Urbandale, Iowa." (*Id.* at ¶ 2). This action arises out of an insurance dispute concerning a hotel building and the surrounding area in Nashville, Tennessee ("Insured Premises") in which Plaintiff had an insurable interest pursuant to the terms of an insurance contract (the "Policy") entered into with Defendant. (*Id.* at ¶¶ 5-8, 14). The Insured Premises were damaged as a result of extreme weather that occurred in March 2020. (*Id.* at ¶¶ 15-16). Plaintiff contends that Defendant did not pay the amounts owed to Plaintiff under the Policy after the damage to the Insured Premises, and based on that contention brings a single claim for breach of contract against Defendant. (*Id.* at ¶¶ 47-57). Plaintiff seeks various forms of damages from Defendant, including compensatory damages and an award of punitive damages. (*Id.* at 17).

## ANALYSIS

Via the Motion, Defendant makes two requests. First, Defendant requests leave to file a motion for partial summary judgment: the Proposed Motion for Partial Summary Judgment. Second, Defendant seeks certification of two questions to the Tennessee Supreme Court. The Court will address each of these requests in turn.[3]

---

[2] In the Background section, the Court cites to the operative, amended complaint. (Doc. No. 17, "Amended Complaint"). For the purposes of the instant Motion, none of the facts alleged in the Amended Complaint are taken as true, and the Court provides them here merely for context to the instant Motion.

[3] The Court notes here, as an initial matter, that it has little doubt that Tennessee state law applies to this action given that it is an action (seemingly, although the Amended Complaint does not state this explicitly) over which the Court may exercise jurisdiction solely based on diversity jurisdiction and concerning events that took place in Tennessee. *See e.g., Beahm v. Auto Owners Ins. Co.*, No. 3:13-CV-160-JMH, 2013 WL 3976622, at *2 (E.D. Tenn. Aug. 2, 2013) ("Because this action is in this Court on the basis of diversity jurisdiction, state substantive law, and, thus, Tennessee law, applies."). The parties likewise (as evidenced by the instant Motion) do not dispute that Tennessee state law governs this dispute.

*1. Defendant's Request for Leave to Seek Partial Summary Judgment*

As noted above, Defendant seeks leave to file a motion for partial summary judgment concerning the damages that Plaintiff may be able to collect from Defendant—the Proposed Motion for Partial Summary Judgment—wherein it will request that (1) the "Court grant partial summary judgment for [Defendant], holding that Tennessee's bad-faith statute, T.C.A. § 56-7-105[(a)], prov[id]es the exclusive extra-contractual remedy in insurance-coverage cases against insurers for refusal to pay," and (2) the Court "grant partial summary judgment for [Defendant], holding that Tennessee's statutory cap on punitive damages, T.C.A. § 29-39-104, does not violate the Tennessee Constitution's right to a trial by jury." (Doc. No. 42 at 1-2).

Put another way, Defendant, in requesting leave to seek partial summary judgment as to what damages Plaintiff would be able to collect from Defendant, specifically seeks a determination of whether T.C.A. § 56-7-105(a)—which provides for certain monetary remedies against insurers in cases where an insurer fails to pay for a loss promptly, and, importantly, does not contemplate punitive damages—provides the exclusive remedies for insurance disputes like the instant action, or, instead, whether Plaintiff may also seek punitive damages from Defendant. Defendant further seeks to determine whether T.C.A. § 29-39-104's cap on punitive damages—a cap which is the greater of (a) two times the amount of compensatory damages recovered in an action or (b) $500,000, T.C.A. § 29-39-104(a)(5)(A-B)—violates the Tennessee Constitution. In essence then, Defendant's request seeking leave to file a motion for summary judgment is concerned solely with the amount of damages that Plaintiff would potentially be able to collect.

As an initial matter, Defendant has acted properly in seeking leave to file its motion for partial summary judgment, given this case's initial case management order's prescription:

> No motion for partial summary judgment shall be filed except by permission of the Court. Any party wishing to file such a motion shall first file a separate motion that

gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel, and the Court.

(Doc. No. 24 at 6).

Defendant contends that "[p]ermitting [Defendant] to file its proposed motion for partial summary judgment would (i) promote judicial efficiency and (ii) serve the ends of justice and promote state–federal comity." (Doc. No. 43 at 4). Defendant argues specifically that:

> With respect to judicial efficiency, the proposed motion poses two pure questions of Tennessee law. The resolution of the first question, which the Tennessee Supreme Court has never addressed, will determine whether [Plaintiff] may, or may not, seek punitive damages at trial. If the answer is no, then [Plaintiff] would be barred from introducing any evidence of malicious, intentional, reckless, or fraudulent misconduct that could provide the factual predicate for awarding punitive damages. The absence of such evidence could significantly affect the complexity and duration of trial, and reduce the issues the jury would have to consider.
>
> The resolution of the second question is equally important. If [Plaintiff] is permitted to seek punitive damages, then in light of *McClay*, any award it receives should be capped at the greater of twice compensatory damages or $500,000 in compliance with T.C.A. § 29-39-104(a)(5). On this point, *Lindenberg's* majority opinion is plainly no longer an accurate prediction of how the Tennessee Supreme Court would decide the issue.

(Doc. No. 43 at 4).[4] Summing up, Defendant contends that permitting it to file the Proposed Motion for Partial Summary Judgment serves judicial efficiency because it "would save the parties

---

[4] In *McClay*, on certification of questions from this Court, the Tennessee Supreme Court found that the statutory cap on noneconomic damages in T.C.A. § 29-39-102 was constitutional and did not "violate the right to trial by jury, the doctrine of separation of powers, or the equal protection provisions of the Tennessee Constitution." *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 696 (Tenn. 2020).

In *Lindenberg,* the Sixth Circuit found that "[u]pon our assessment of Tennessee law, we find that the punitive damages bar set forth in [T.C.A.] § 29-39-104 violates the individual right to a trial by jury set forth in the Tennessee Constitution." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364 (6th Cir. 2018).

At base, in light of *McClay*'s holding that the cap on *noneconomic* damages in § 29-39-102 is constitutional, Defendant argues that the Sixth Circuit's holding in *Lindenberg*, which found that the cap on *punitive* damages in § 29-39-104 violates the Tennessee Constitution, is no longer good law.

needless expense[] to obtain certainty on these issues now, rather than addressing them by way of a motion in limine or at a trial by jury." (*Id.* at 4-5).

The Court disagrees. As an initial matter, the Court agrees with the following assessment from another district court: "Motions for partial summary judgment are generally disfavored because they are resolved by orders that cannot be appealed until final adjudication. As a result, they are only permitted if they benefit the parties and serve the interest of judicial economy." *Right Way Nutrition, LLC v. Gen. Nutrition Corp.*, 421 F. Supp. 3d 78, 87 (W.D. Pa. 2019) (citing *RePass v. Vreeland*, 357 F.2d 801, 805 (3d Cir. 1966)). *See also, e.g., Oto Software, Inc. v. Highwall Techs., LLC*, No. 08-CV-01897-PAB-CBS, 2010 WL 3842434, at *22 (D. Colo. Aug. 6, 2010) ("motions for partial summary judgment are disfavored") (citing *Bruschini v. Board of Education of Arlington Central School District,* 911 F. Supp. 104, 106 (S.D.N.Y.1995)), *report and recommendation adopted,* No. 08-CV-01897-PAB-CBS, 2010 WL 3842430 (D. Colo. Sept. 27, 2010). And although it often goes unsaid, the Court enjoys discretion in declining to consider a motion for partial summary judgment on the grounds that such consideration would not promote judicial efficiency. *See, e.g., Harmon v. Shell Oil Co.*, No. 3:20-CV-00021, 2023 WL 8014235, at *4 (S.D. Tex. Nov. 9, 2023) ("The Fifth Circuit has explained that a district court retains discretion to deny a motion for partial summary judgment, even if there are no genuine issues of fact, when the proposed motion does not ultimately advance the ultimate resolution of a case.") (citing *Powell v. Radkins,* 506 F.2d 763, 765 (5th Cir. 1975)), *report and recommendation adopted*, No. 3:20-CV-21, 2025 WL 366296 (S.D. Tex. Feb. 3, 2025).

Here, the Court exercises its discretion to decline to consider—and thus will not grant Defendant's request for leave to file—the Proposed Motion for Partial Summary Judgment. The

Court is far from convinced that such consideration of the Proposed Motion for Partial Summary Judgment would promote judicial efficiency.

For one thing, Plaintiff concedes, with respect to the question of whether the punitive damages cap in T.C.A. § 29-39-104 is constitutional under the Tennessee Constitution, that it will not dispute that the cap is constitutional.[5] Indeed, Plaintiff avers:

> If, at trial, the jury awards punitive damages to [Plaintiff] and if those punitive damages exceed twice the amount of compensatory damages award or $500,000, whichever is greater (*see* Tenn. Code Ann. § 29-39-104(a)(5)), [Plaintiff] agrees that the Court can simply enter an Order of remittitur to reduce the award of punitive damages in compliance with the statute.

(Doc. No. 48 at 8). And the lack of such a challenge in effect provides Defendant exactly what it desires on this issue, given that once the cap is conceded to be constitutional, such constitutionality would limit whatever punitive damages Plaintiff could collect from Defendant based on an award of punitive damages (if any) at trial. In other words, with respect to at least one aspect of Defendant's Proposed Motion for Partial Summary Judgment, there does not seem to even be an active dispute between the parties, making the Court especially hesitant to grant Defendant leave to file the Proposed Motion for Partial Summary Judgment.

Next, the amount of time it very likely will take to resolve the Proposed Motion for Partial Summary Judgment is very substantial. By the Court's count, Defendant has filed 136 pages in connection with the Proposed Motion for Partial Summary Judgment.[6] And that, of course, does not include whatever Plaintiff would file in response and what Defendant would file in reply. And

---

[5] At this juncture, the Court declines to opine on whether the cap on punitive damages in T.C.A. § 29-39-104 violates the Tennessee Constitution.

[6] To the extent that Defendant might posit that the Court does not actually have to read every page of each filing made in connection with the Proposed Motion for Partial Summary Judgment, or at least not every word of every filing, that would be slight comfort to the Court.

perhaps most importantly, given that Defendant's Proposed Motion for Partial Summary Judgment is concerned solely with the amount of damages that Plaintiff could recover from Defendant, there is every chance that irrespective of the Court's (prospective) ruling on the Proposed Motion for Partial Summary Judgment, such ruling would ultimately prove irrelevant to this action, given that damages in this action would be determined only *if* a prospective jury in fact finds that Defendant actually *breached* the Policy.

The Court declines to take such a gamble with very substantial judicial resources, which are in short supply these days. The Court instead will take its chances that the case will be resolved either short of trial—(something that the Court urges the parties to work toward)—or at (or after) an efficient trial, at which the Court could, if needed, address the issues that Defendant wishes to raise in its Proposed Motion for Partial Summary Judgment.[7]

This leads to the Court's final point in resolving Defendant's request to file the Proposed Motion for Partial Summary Judgment. Even if the Court granted Defendant's Proposed Motion for Partial Summary Judgment, this would not serve to eliminate the trial. Indeed, it would not even result solely in a trial on liability or on damages. Instead, it would merely result in some clarification as to what damages Plaintiff may seek to recover from Defendant under Tennessee state law. This clarification can be attained (if ultimately needed) in a more efficient manner than a motion for partial summary judgment.

For these reasons, the Court declines to consider the Proposed Motion for Partial Summary Judgment. Therefore, the Court denies Defendant's request for leave to file that motion.

---

[7] Indeed, Defendant concedes that the issues it plans to raise through its Proposed Motion for Partial Summary Judgment can instead be addressed via a motion in limine or at trial. (Doc. No. 43 at 4-5). The Court notes, however, that perhaps the best time to raise the issues that Defendant seeks to raise would be *after trial*, if and when (and to the extent) that the jury returns a verdict implicating these issues.

*2. Defendant's Request for Certification of Questions to the Tennessee Supreme Court*

That leaves Defendant's alternative request to certify two questions to the Tennessee Supreme Court. As noted above, Defendant requests, in the alternative to being granted leave to file its Proposed Motion for Partial Summary Judgment, to certify two questions to the Tennessee Supreme Court: (1) "Does Tennessee's bad-faith statute, T.C.A. § 56-7-105(a), provide the exclusive extra-contractual remedy against an insurer for breach of an insurance policy?"; and (2) "If Tennessee's bad-faith statute does not provide the exclusive extra-contractual remedy against an insurer for breach of an insurance policy, does Tennessee's statutory cap on punitive damages, T.C.A. § 29-39-104, violate the right to a jury trial under the Tennessee Constitution?" (Doc. No. 42 at 2).

In other words, Defendant requests certification of a question to the Tennessee Supreme Court to determine whether T.C.A. § 56-7-105(a)—which provides for certain monetary remedies against insurers in cases where an insurer fails to pay for a loss promptly, and, importantly, does not contemplate punitive damages—provides the exclusive remedies for insurance disputes like the instant action, or, instead, whether Plaintiff may also seek punitive damages from Defendant. And Defendant further seeks certification of a question to the Tennessee Supreme Court to determine whether T.C.A. § 29-39-104's cap on punitive damages—a cap that is the greater of (a) two times the amount of compensatory damages recovered or (b) $500,000 dollars, T.C.A. § 29-39-104(a)(5)(A-B)—is constitutional under the Tennessee Constitution. In essence then, Defendant's request for certification concerns solely the amount of damages that Plaintiff would potentially be able to collect from Defendant.

"The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449-

50 (6th Cir. 2009) (quoting *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995)). "Certification 'is most appropriate when the question is new and state law is unsettled.'" *Id.* at 450 (quoting *Transamerica*, 50 F.3d at 372). "[H]owever, the federal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *Id.* (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)). *See also Transamerica*, 50 F.3d at 372 (finding Kentucky law to be "relatively settled" even when "Kentucky has not addressed the exact question at issue" because "[Kentucky] does have well-established principles to govern the interpretation of insurance contracts" (which were at issue in the case)).

With respect to the Tennessee Supreme Court in particular, Tenn. Sup. Ct. R. 23 § 1 provides certification is appropriate where (1) "there are questions of law of this state which *will* be determinative of the cause"; and (2) "as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." (emphasis added). *See also BKB Properties, LLC v. SunTrust Bank*, 453 F. App'x 582, 588 (6th Cir. 2011) (discussing Tenn. Sup. Ct. R. 23 § 1).[8]

"A question of law is 'determinative of the cause' if it is claim-dispositive.'" *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 147 F. Supp. 3d 694, 700 (W.D. Tenn. 2015) (citing *Becker v. Ford Motor Co.*, No. 1:13-CV-276-SKL, 2013 WL 6046080, at *2 (E.D. Tenn. Nov. 13, 2013)). Where a question merely *may* be determinative, federal courts in Tennessee have declined to certify a

---

[8] In addressing some of the "concerns about overuse of the certified question process," the Tennessee Supreme Court has noted that "certifying a question is not always the best option. Federal courts are, of course, permitted to decide issues of state law in cases over which they have jurisdiction, as we may decide issues of federal law in cases over which we have jurisdiction. In our system, it is commonplace for a question of law to be decided first by a court other than the court empowered to resolve the question definitively." *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 n.3 (Tenn. 2010).

question to the Tennessee Supreme Court. *See e.g., Thompson Rsch. Grp., LLC v. Winnebago Indus., Inc.*, No. 3:17-CV-01595, 2020 WL 12932418, at \*2 (M.D. Tenn. Mar. 23, 2020) (concluding that certification of "proposed questions is not warranted because resolution of those questions *may* not be determinative of the case," as the "proposed questions assume certain facts have been established, and are determinative only if one views the disputed facts in Defendant's favor." (emphasis added)); *Carrico v. Uponor, Inc.*, No. 3:23-CV-00497, 2025 WL 2918419, at \*8 (M.D. Tenn. Oct. 14, 2025) ("A question . . . that is merely potentially determinative [] has been rejected for certification by this Court before").

As noted above, the two questions that Defendant requests that the Court certify to the Tennessee Supreme Court concern damages that Plaintiff may ultimately be able to collect from Defendant. Here, the Court need not make a determination of whether the questions that Defendant seeks to certify to the Tennessee Supreme Court are novel or whether there is controlling Tennessee Supreme Court precedent on the questions, because the questions that Defendant seeks to have certified are not, at this moment, "determinative of the cause." Tenn. Sup. Ct. R. 23 § 1.

As noted above, the questions that Defendant seeks to have certified to the Tennessee Supreme Court concern the damages that Plaintiff *may* be able to collect from Defendant. However, Defendant's questions regarding damages, at this juncture—prior to trial, prior to a jury verdict, and prior to a judgment awarding Plaintiff *any* damages (let alone damages beyond those contemplated in T.C.A. § 56-7-105(a) or punitive damages in excess of the cap on punitive damages in T.C.A. § 29-39-104)—cannot possibly be determinative of the cause. Indeed, there is every chance that irrespective of how the Tennessee Supreme Court answers the questions that Defendant seeks to have certified, such answers from the Tennessee Supreme Court would be irrelevant to this action, given that damages in this action would only be determined after a

prospective jury first finds that Defendant actually *breached* the underlying Policy, and thereafter determined whatever damages Plaintiff suffered. At some future date—perhaps if and when the jury has awarded Plaintiff damages beyond those contemplated by T.C.A. § 56-7-105(a) and/or punitive damages in excess of the statutory cap in T.C.A. § 29-39-104—the Tennessee Supreme Court's answers to the questions that Defendant seeks to have certified could be determinative of the cause, insofar as the Tennessee Supreme Court's answers to the questions that Defendant seeks to have certified could impact the legal viability of part of the jury's award to Plaintiff. *Cf. McClay*, 596 S.W.3d at 688-89 (accepting certification of questions from this Court concerning whether "the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102" was unconstitutional under the Tennessee Constitution after jury verdict and judgment, which included an award in excess of the $750,000 cap in noneconomic damages imposed by T.C.A. § 29-39-102, had been entered in a matter).

But at this moment, the questions that Defendant seeks to have certified are not determinative of the cause. As this Court has previously stated, even if a question "'could be dispositive' of a claim at some point, that is not sufficient to permit certification under Tenn. Sup. Ct. R. 23 § 1 which requires that an issue '*will* be determinative of the cause.'" *Carrico*, 2025 WL 2918419, at *7. To put it another way, that the questions Defendant seeks to have certified may at some indeterminate point become determinative of the cause is not sufficient permit their certification to the Tennessee Supreme Court at this juncture. *Cf. Thompson*, 2020 WL 12932418, at *2 (rejecting certification of certain questions when "resolution of those questions may not be determinative of the case" since "[t]he proposed questions assume certain facts have been established, and are determinative only if one views the disputed facts in Defendant's favor.").

Therefore, Defendant's request to certify questions to the Tennessee Supreme Court is also denied.

CONCLUSION

Accordingly, Defendant's Motion (Doc. No. 42) is **DENIED** in its entirety.

IT IS SO ORDERED.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE